### LOUISIANA AGRICULTURAL CORPORATION v. PELICAN OIL REFINING CO., Inc.*

(Circuit Court of Appeals, Fifth Circuit. April 5, 1919.)

### No. 3270.

1. EQUITY ☞66—MAXIMS—SEEKING AND DOING EQUITY.

One is not entitled to the aid of a court of equity for the enforcement of any right he may have, unless he is ready and willing to do equity.

2. INJUNCTION ☞108—CONDITION PRECEDENT—PAYMENT OF DEBT TO DEFENDANT.

The owner of a capsized vessel, which has gone aground, is not entitled to an injunction to restrain a creditor having a lien on it from saving it, where he has not, by pleading or otherwise, offered to pay the debt owing to the creditor, or to do equity, even though the creditor has no legal right to save the vessel.

3. APPEAL AND ERROR ☞843(2)—MATTERS REVIEWABLE—MOOT QUESTIONS.

On appeal from an order granting an injunction, the question of the propriety of the issuance of an injunction will not be reviewed, where the injunction is no longer effective.

4. TRIAL ☞11(3)—TRANSFER OF CAUSE.

In a suit for injunction, where plaintiff was denied relief on the ground that he refused to do equity, court should not have dismissed the bill, under equity rule 22 (198 Fed. xxiv, 115 C. C. A. xxiv), but should have transferred the cause to the law side of the court, where a state of facts was alleged which, if proved and not rebutted, would entitle the plaintiff to some relief in an action at law.

Appeal from the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

Suit by the Louisiana Agricultural Corporation against the Pelican Oil Refining Company, Incorporated. From a decree for defendant, plaintiff appeals. Affirmed in part, and reversed and remanded in part, with directions.

Claude L. Johnson and T. M. Miller, both of New Orleans, La., for appellant.

M. M. Boatner and Geo. H. Terriberry, both of New Orleans, La., for appellee.

Before WALKER and BATTS, Circuit Judges, and GRUBB, District Judge.

WALKER, Circuit Judge. This is an appeal from a decree which was adverse to the appellant, Louisiana Agricultural Corporation, the plaintiff in a bill in equity against the appellee, Pelican Oil Refining Company, praying that the latter be enjoined from trespassing upon or questioning or slandering appellant's alleged title and possession of the steam yacht Radha; and for general relief. The averments of the bill showed that the claim of the appellant to the vessel mentioned was

---

based upon an alleged sale to it by Charles Collins Buck, on or about June 21, 1913, of all his rights, title, and interest therein. The bill contained averments to the effect that prior to the just-mentioned sale said vessel was bought by one Stern at a judicial sale under a decree made in a suit to which said Buck was a party, and that Stern executed a conveyance, in blank, of the vessel, which was delivered to Buck's attorney, and that thereupon Buck re-entered into possession and ownership of the vessel. The averments as to Buck acquiring ownership and possession of the vessel were duly put in issue. The evidence adduced showed the following state of facts:

Stern, the purchaser of the vessel at judicial sale, agreed to release or sell it, not to Buck alone, but to Buck and two creditors of his, who held mortgage liens on the vessel, for considerations which included the payment of $400 to Stern. Buck being unable to pay that amount, and the mortgage creditors being unwilling to pay it, with their consent and approval, an arrangement was made with the Metropolitan Bank to pay Stern the $400 upon the delivery to it of a conveyance of the vessel by Stern; there being a blank left in that instrument for the insertion of the name of a grantee. That arrangement was carried out. After that occurred, the vessel capsized in the Mississippi river near its bank in the upper part of the city of New Orleans. From that time until the time of the bringing of this suit it remained there, aground and partly under water. Buck refused to pay the amount owing to the Metropolitan Bank, though often requested to do so. He would not, individually, or as the managing officer of the appellant, agree to a sale of the vessel, though, as stated by a witness for the appellant, it was "going to wreck and ruin." In this situation the Metropolitan Bank, in July, 1917, entered into an agreement with the appellee, by which the latter agreed to attempt to salve the vessel at its own expense, and, if successful, was to have an option for 30 days after the vessel was floated to buy it for $3,000. Under this arrangement, the appellant took charge of the vessel; no one else then being in possession of it. Up to that time it had no notice that the appellant had or asserted any claim to it.

[1, 2] An injunction was prayed for by the appellant as a means of preventing the carrying out by the appellee of its undertaking to salve the vessel. The appellant's prayer for an injunction was denied, and its bill was dismissed without prejudice to any rights it may have in and to the said yacht Radha. It is plain that the transaction with the Metropolitan Bank was intended to secure it for the amount advanced by it. There was evidence indicating that debts other than that one were intended to be secured. By that transaction the bank was enabled to vest title to the vessel in itself, or another, by inserting the name of the grantee in the blank left for that purpose in the conveyance made by Stern. Buck being a party to that transaction, if he reacquired possession, it may be inferred he did so for the bank, or that he held possession subject to its rights. By the appellant's purchase from Buck, it acquired only such rights as he had. It is not entitled to the aid of a court of equity for the enforcement of any right it may have, unless it is ready and willing to do equity. It has not, by pleading or

otherwise, offered to pay the debt owing to the bank. Whether the bank did or did not have the right to salve the vessel itself, or to get another to do so, a court of equity is not called on to help the appellant to prevent this being done, so long as the appellant does not evince a willingness to do equity in the premises. Whether the action of the court in denying the injunction prayed for by the appellant is or is not sustainable on other grounds, it is sustainable on the ground that the appellant was seeking the aid of a court of equity and did not show its readiness or willingness to do equity. The appellant cannot refrain from either rescuing the vessel or paying what is due on it, and, at the same time, be entitled to the aid of a court of equity to prevent the carrying out of an attempt to save the vessel to which a creditor having a claim upon it is a party.

[3] On a cross-bill filed by the appellee, the court ordered the issuance of an injunction restraining the appellant from interfering with the appellee, its agents or servants, its contractors or subcontractors, in the work of raising and salving the said yacht. On the hearing in this court, it was stated, and not denied, that since the decree appealed from was rendered the appellee had raised, salved, and repaired or reconstructed the vessel, and that it is now in use in commerce. This being true, the injunction issued on the cross-bill no longer is effective, and the question of the propriety of its issue and maintenance has become a moot one. So far as that action of the court is concerned, there remains nothing on which the decision of this court can operate, and it need not decide a question that has become purely moot. Wingert v. First National Bank, 223 U. S. 670, 32 Sup. Ct. 391, 56 L,. Ed. 605.

[4] The record shows that the appellant alleged a state of facts which, if proved, and not rebutted, entitled it to some relief in an action at law complaining of what the appellee did with the vessel under its contract with the Metropolitan Bank. The situation was such a one as to make equity rule 22 (198 Fed. xxiv, 115 C. C. A. xxiv) applicable. Instead of dismissing appellant's bill, though this was done without prejudice, the court should have ordered that the cause be transferred to the law side, to be there proceeded with, as provided in the rule mentioned.

It follows from the above-stated conclusions that the decree appealed from should be affirmed, except the part of it which ordered the dismissal of the appellant's bill without prejudice, and that that part of the decree should be reversed, and that the cause should be remanded, with direction to transfer it to the law side of the court; and it is so ordered, each of the parties to be taxed with half of the costs.