PEOPLE, *ex rel.* ATTORNEY GENERAL, *v.* DETROIT MORT-
GAGE CORPORATION.

1. PROCESS—SERVICE OF PROCESS NECESSARY TO MAKE PARTY DE-
FENDANT—NUISANCE.

In proceedings by the State to have certain premises
closed as a nuisance under 2 Comp. Laws 1915, § 7781
*et seq.,* as amended by Act No. 337, Pub. Acts 1917, and
Act No. 112, Pub. Acts 1919, where upon the hearing it
appeared that the owner of record had deeded the prop-
erty in question to another, the latter was not properly
made a party defendant by merely serving upon its presi-
dent a copy of the bill of complaint, since a party may
not be subjected to the jurisdiction of the court except
by the issuance and service of process.

2. APPEAL AND ERROR—PARTIES—RIGHTS OF PARTY NOT DETERMINED
WHERE NOT PROPERLY MADE A PARTY.

On appeal from a decree closing a certain building as a
nuisance by one claiming ownership of the property in
question but not properly made a party defendant, *held,*
that the validity or *bona fides* of the deed to it of said
property cannot properly be determined in this proceeding,
and the case is therefore remanded with leave to plaintiff
to bring in said party as defendant. McDONALD, SHARPE,
and MOORE, JJ., dissenting in part.

Appeal from Wayne; Carr (Leland W.), J., pre-
siding. Submitted April 22, 1924. (Docket No.
108.)· Decided July 24, 1924.

Bill by the people of the State of Michigan, on the
relation of Andrew B. Dougherty, attorney general,
against the Detroit Mortgage Corporation, Clarence
Porter, and the Realty Mortgage Corporation to abate
a nuisance. From a decree for plaintiff, defendant
Realty Mortgage Corporation appeals. Reversed
and remanded.

*Andrew B. Dougherty*, Attorney General, *Carl D. Mosier, Thomas J. Green*, and *Donald W. Sessions*, Assistants Attorney General, for plaintiff.

*George E. Brand* (*William Van Dyke*, of counsel), for appellant.

McDONALD, J. (*dissenting*).    This is an appeal by the Realty Mortgage Corporation from a decree of the circuit court in Wayne county, restraining the keeping of a nuisance and for its abatement.    The Lansing apartment building in the city of Detroit contains 6 floors with 52 apartments.    On the 22d of December, 1923, the attorney general filed a bill of complaint in the Wayne circuit alleging that the building was being used for the purpose of storing, possessing and selling intoxicating liquors, and as a resort for various disorderly persons, mostly colored, including prostitutes, panderers, thieves, narcotic addicts, pickpockets and bootleggers.    Clarence Porter, the manager of the building, and the Detroit Mortgage Corporation, the owner of record, were made parties defendant.    The Realty Mortgage Corporation was made a party by order of the court during the hearing.    The case was defended by counsel representing the Detroit Mortgage Corporation.    The evidence taken on the hearing fully supported the allegations of the bill and the circuit judge made a decree declaring the building a nuisance and closing it for a period of one year.    Provision was also made for the sale of the contents in accordance with the statute, and all of the parties were enjoined from continuing the business.    From this decree no appeal was taken except by the Realty Mortgage Corporation.

It is first contended by the defendant that it did not intervene in the case and was not made a party defendant by pleadings, process or proper service, and that, therefore, the court acquired no jurisdiction of

it or its property. When the bill was filed the records in the office of the register of deeds showed that the title to the property was in the Detroit Mortgage Corporation. This corporation appeared and defended the suit, though in its answer it denied ownership, claiming that it had parted with its title on May 1, 1923, but not stating to whom the transfer had been made. On the hearing one Fred Gleason, president of the Realty Mortgage Corporation, was sworn as a witness for the defendants. He produced an unrecorded deed of the premises in which the Realty Mortgage Corporation was the grantee, showing a conveyance to that corporation on May 1, 1923. After this deed was read in evidence, acting on the suggestion of the court, the attorney general moved that the Realty Mortgage Corporation be made a party defendant. Thereupon the court entered an order dated January 30, 1924, the concluding part of which is as follows:

"Now, therefore, it is ordered that the Realty Mortgage Corporation be and the same is, made a party defendant; that a copy of the bill of complaint filed herein be this day served upon said defendant and that the hearing therein be continued until Friday, February 1, 1924, at 2 o'clock in the afternoon."

Service of a copy of the bill of complaint was immediately made upon Mr. Gleason, who was in the court room at the time. The bill of complaint was not amended. No notice or summons was issued or served. The Realty Mortgage Corporation did not appear or answer and its default was not taken. In thus attempting to add a new party, the proper practice was not followed. We know of no method of subjecting a party to the jurisdiction of a court, except by the issuance and service of process. Though named in the action as a party defendant, no binding judgment can be rendered against one who has not been served with process. The court acquired no

jurisdiction of the Realty Mortgage Corporation, and that part of the decree which grants injunctive relief against it is without force or effect. See *Dalton* v. *Weber*, 203 Mich. 455.

For the same reason the Realty Mortgage Corporation contends that the portion of the decree which orders an abatement of the nuisance by closing the building for one year is also without force and effect. We are not convinced that the Realty Mortgage Corporation was the owner of these premises and was a necessary party. The two corporations were as closely connected as the celebrated Siamese twins. They occupied the same offices, had practically the same officers, and were engaged in the same business. The Detroit Mortgage Corporation had the record title to the premises. Both say that a deed which has never been recorded was made by one to the other on May 1, 1923, but neither of them made any such claim until this suit was in progress. There was no change in possession of the premises and after the purported deed was given the Detroit Mortgage Corporation continued to collect the rents, manage the building and to exercise all of the acts of ownership that it had previously exercised. It is true, Mr. Gleason testifies that the Detroit Mortgage Corporation was then acting as the agent of the Realty Mortgage Corporation, but it is a significant fact that it kept all of the rents the same as it did before parting with the title. Mr. Gleason was president of the Realty Mortgage Corporation. He says that the treasury of his company was empty, that it did not have sufficient money to buy revenue stamps for the deed or to pay the taxes in order that it might be recorded. This condition still existed at the time of the hearing, notwithstanding the fact that during that period the Detroit Mortgage Corporation collected a gross rental estimated at $25,000 from the building which it kept for itself, though its alleged principal was sorely in

need of the money. These facts are not consistent with ownership in the Realty Mortgage Corporation. Moreover, it left the defense of this suit to the Detroit Mortgage Corporation, though it claims that corporation had no interest in the premises involved. If it were the owner it was vitally interested in the litigation which might result in the closing of its building for a year, and the loss of gross rentals estimated at $42,000. Instead of intervening as it had a right to do under the statute or accepting the invitation of the court to become a party, it allowed the owner of the record title to make the defense. From the time when it claims to have acquired the title up to the present, all of its acts indicate a recognition of ownership in the Detroit Mortgage Corporation. We are not favorably impressed with the conduct of these two corporations. Both knew of the character of the building and of previous attempts of the State to have the nuisance abated. Men who would knowingly maintain such a low down, disreputable and vicious resort, do not present a very respectable appearance in a court of conscience. When they come in with an unstamped, unrecorded deed under circumstances as shown by this record, their claims may well be regarded as an attempt at a cunning evasion of responsibility under the statute. It is our judgment that the circuit court obtained jurisdiction of the property by service of its process upon the Detroit Mortgage Corporation.

In this view of the case the question as to the constitutionality of the statute, which counsel for the defendant has ably discussed in his brief, does not arise on this record. No other questions require discussion.

To the extent that the decree enjoins the Realty Mortgage Corporation it should be reversed. In all other respects it should be affirmed. A decree should be entered in this court enjoining Clarence Porter and

the Detroit Mortgage Corporation, and abating the nuisance as provided in the decree of the circuit judge. Neither party should have costs.

SHARPE and MOORE, JJ., concurred with McDONALD, J.

FELLOWS, J.   I agree with Justice McDONALD that the Realty Mortgage Corporation was not properly made a party to this proceeding.    Not being a party I do not think we can determine the validity or *bona fides* of the deed to it of the property in question.    I think the case should be remanded with leave to the plaintiff to bring in the Realty Mortgage Corporation as a defendant, and that property to which it holds a deed should not be "padlocked" without giving it its day in court.    I think costs should abide the final decision.

CLARK, C. J., and BIRD, STEERE, and WIEST, JJ., concurred with FELLOWS, J.